1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROWN EXPRESS, LLC, | ) 1: 04-CV-5981-SMS |
| Plaintiff, | ) ORDER DENYING DEFENDANT'S MOTION |
| v. | ) FOR SUMMARY JUDGMENT (DOC. 21) |
| OZARK TRUCKING, INC., | ) |
| Defendant. | ) |

        Plaintiff is proceeding with a civil action in this Court.
The matter has been referred to the Magistrate Judge for all
proceedings, including the entry of final judgment, pursuant to
28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301.

    I. Background

        On July 16, 2004, Defendant Ozark Trucking, Inc., filed a
notice of removal of this action from the Superior Court of
Fresno County. The action concerns allegedly damaged goods
transported from Henderson, Nevada and delivered to Sacramento,
California by Defendant, and thus proceeds pursuant to 28 U.S.C.
§ 1331, and more particularly 49 U.S.C. § 14706(d)(1) and (2),
which permits a civil action against a delivering carrier, or a
carrier alleged to have been responsible for a loss, to be

brought in a district court and removed to the district in which the loss or damage is alleged to have occurred.

The action was commenced on April 5, 2004, and Defendant was served in June 2004. Contrary to Defendant's representation in the notice of removal, no copy of the complaint was filed in this court as an exhibit to the notice of removal. However, a copy does appear as an exhibit to the declaration of Ward, the chief financial officer of Defendant. The first claim is for breach of a written contract in the form of refusal to reimburse Plaintiff for a loss associated with a spoiled, refrigerated load of food that Defendant hauled and that was refused by Sam's, for which Plaintiff had to pay for in its entirety. The second claim is for an account stated within the last four years for goods and merchandise that Defendant promised to deliver but failed to deliver in good and marketable condition. It appears from the answer that the alleged written contract was exhibit A to the complaint (Ans. at 2), but the complaint is not attached as an exhibit to the declaration.

Defendant answered on August 3, 2004, admitting that the complaint was four pages with attachments and exhibits, the state action was filed in Fresno County Superior Court (action number 04CECG01141), and Defendant Ozark did not honor Plaintiff's claim; denying that the contract was entered into in Fresno County, that Exhibit A to the complaint was the contract, that any damage or injury to Plaintiff occurred, that an account was stated, or that there was an indebtedness; and asserting affirmative defenses, including lack of causation, statute of limitations (both Cal. Civ Proc. Code § 339 and 49 U.S.C. §

14706), assumption of the risk, unspecified defenses, limitation
of damages to agreed or released rate, comparative fault, failure
to mitigate, unclean hands, unjust enrichment, estoppel, waiver,
laches, failure of consideration, and release.

The case was scheduled on November 17, 2004, and the order
indicates that the major claim is for breach of contract between
Crown and Ozark. Plaintiff Crown, a refrigerated trucking
company, had a contract with P&O Cold Logistics (P&O), and used
Defendant Ozark as a subhauler. On June 4 or 5, 2000, Plaintiff
asked Defendant to haul a load of refrigerated food from P&O's
Henderson, Nevada, facility to Sam's Club in Sacramento; upon
delivery to Sam's, Sam's refused the load because of unacceptable
food damage due to faulty temperature control. Plaintiff contends
that it paid P&O $52,306.75 for the load, but Defendant has
refused reimbursement. Plaintiff asserts that Defendant failed to
maintain food temperature; Defendant maintains that the load,
which was loaded into the truck and fitted with a bulkhead to
separate refrigerated and frozen foods and sealed by P&O, was
properly maintained by it and thus not damaged by its conduct;
rather, the rejected refrigerated products were possibly loaded
in a warm condition by P&O. Defendant contends that the
temperature records of its refrigeration unit show that the
temperature was properly maintained by it. P&O is not a party to
this action.

Pursuant to the amended scheduling order filed on January
21, 2005, the Plaintiff timely filed a motion for summary
judgment, supporting memorandum, statement of undisputed facts,

1  and declarations of Gary Todd and Michael Ward on June 10, 2005.[1]

2  There has been no response to the motion. Although the matter was

3  set for hearing on July 14, 2004, by separate order the Court has

4  vacated the hearing, and the matter has been submitted for

5  decision.

6      Counsel for both parties filed consent to Magistrate Judge

7  jurisdiction to conduct all proceedings, including trial and

8  judgment, on January 21, 2005, and Judge Coyle ordered the case

9  assigned to the undersigned Magistrate Judge on January 27, 2005.

10     II. Summary Judgment

11     Summary judgment is appropriate when it is demonstrated that

12 there exists no genuine issue as to any material fact, and that

13 the moving party is entitled to judgment as a matter of law.

14 Fed. R. Civ. P. 56(c). Under summary judgment practice, the

15 moving party

16          [A]lways bears the initial responsibility of
           informing the district court of the basis for
17         its motion, and identifying those portions of
           "the pleadings, depositions, answers to
18         interrogatories, and admissions on file,
           together with the affidavits, if any," which
19         it believes demonstrate the absence of a
           genuine issue of material fact.
20
   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the
21
   moving party's burden to establish that there exists no genuine
22
   issue of material fact and that the moving party is entitled to
23
   judgment as a matter of law. British Airways Board v. Boeing Co.,
24
   585 F.2d 946, 951 (9th Cir. 1978).
25
26     Where a party with the ultimate burden of persuasion at

27     _____

       [1] The Court has received a courtesy copy of the exhibits to the Ward declaration, but it is not clear that
28 paper copies were actually filed with the clerk, although a notice of inability to file electronically was filed with the
   clerk.

4

trial as to a matter moves for summary judgment, it must
demonstrate affirmatively by evidence each essential element of
its claim or affirmative defense and must establish that there is
no triable issue of fact as to each essential element such that a
rational trier of fact could render a judgment in its favor.
<u>Southern California Gas Co. v. City of Santa Ana</u>, 336 F.3d 885,
888 (9th Cir. 2003).

     If the moving party meets its initial responsibility, the
burden then shifts to the opposing party to establish that a
genuine issue as to any material fact actually does exist.
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
586 (1986). In attempting to establish the existence of this
factual dispute, the opposing party may not rely upon the denials
of its pleadings, but is required to tender evidence of specific
facts in the form of affidavits or admissible discovery material
in support of its contention that the dispute exists. Rule 56(e);
<u>Matsushita</u>, 475 U.S. at 586 n.11. In the endeavor to establish
the existence of a factual dispute, the opposing party need not
establish a material issue of fact conclusively in its favor. It
is sufficient that "the claimed factual dispute be shown to
require a jury or judge to resolve the parties' differing
versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at
630. Thus, the "purpose of summary judgment is to 'pierce the
pleadings and to assess the proof in order to see whether there
is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587
(quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
amendments). The evidence of the opposing party is to be
believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable

1 inferences that may be drawn from the facts placed before the

2 court must be drawn in favor of the opposing party, Matsushita,

3 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S.

4 654, 655 (1962)(per curiam)).

5      The showings must consist of admissible evidence,

6 Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,

7 1335 n.9 (9th Cir. 1980), or pleadings, depositions, answers to

8 interrogatories, admissions, and affidavits or declarations, Fed.

9 R. Civ. P. 56(c). Affidavits shall be based on personal

10 knowledge, set forth such facts as would be admissible in

11 evidence, and show affirmatively that the affiant is competent to

12 testify to the matters stated therein. Fed. R. Civ. P. 56(e).

13 Sworn or certified copies of all papers or parts thereof referred

14 to in an affidavit shall be attached thereto or served therewith.

15 Id. Declarations pursuant to 28 U.S.C. § 1746 may be used with

16 the same force and effect as affidavits. Pollock v. Pollock, 154

17 F.3d 601, 611, n.20 (6th Cir. 1998). Personal knowledge may be

18 inferred from declarations themselves, such as from facts

19 concerning a declarant's position and participation, Barthelemy

20 v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990);

21 however, a court cannot draw an inference about facts not

22 specifically put in the record by a party, and a court will not

23 assume that general averments embrace specific facts needed to

24 sustain a complaint, Lujan v. National Wildlife Federation, 497

25 U.S. 871, 887 (1990). An admission in a pleading, including a

26 defendant's failure to deny an allegation in a complaint,

27 constitutes an admission. Fed. R. Civ. P. 8(d); Lockwood v Wolf.

28 Corp., 629 F.2d 603, 611 (9th Cir. 1980). Unauthenticated

1  documents cannot be considered on a motion for summary judgment.

2  Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542,

3  1550 (9th Cir. 1990). Legal memoranda and oral argument are not

4  evidence and do not create issues of fact capable of defeating an

5  otherwise valid motion for summary judgment. British Airways Bd.

6  v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

7       The Court is not obligated to consider matters that are in

8  the record but are not specifically brought to its attention; the

9  parties must designate and refer to specific triable facts. Even

10 in the absence of a local rule, for evidence to be considered,

11 the party seeking to rely on it must specify the fact by

12 indicating what the evidence is or says and must indicate where

13 it is located in the file. Although the Court has discretion in

14 appropriate circumstances to consider other material, it has no

15 duty to search the record for evidence establishing a material

16 fact. Carmen v. San Francisco United School Dist., 237 F.3d 1026,

17 1029 (9th Cir. 2001).

18      III. Undisputed Facts

19          A. Delivery, Claim, Denial, and Filing Suit

20      The declaration of Gary Todd, the driver who delivered the

21 load of freight to Sam's Club in Sacramento on or about June 5,

22 2000, establishes that he delivered the load on that date, and

23 the dock manager refused to accept the load because it was too

24 warm; however, Todd's declaration indicates that during the time

25 he had the load on the truck, the temperature alarm did not

26 sound, and thus he observed the temperatures to be acceptable.

27      The declaration of Michael Ward, chief financial officer of

28 Defendant, establishes that he had personal knowledge of the

7

facts which he related, and further establishes the following: 1) that on July 30, 2001, Roger Houston, Defendant's president, received a letter from Plaintiff's attorney, William L. Cowin, dated July 27, 2001, demanding payment of $52,306.75 for the load, (Decl. of Ward at 2, Ex. B); 2) on or about August 8, 2001, Houston replied and denied the claim, (id., Ex. C); 3) on or about September 10, 2001, counsel for Defendant wrote to Crown's counsel and denied the claim, (id. at 2, Ex. D); and 4) on or about June 26, 2004, Defendant was served with this action, which was filed on April 5, 2004, more than two years and one month after the claim was disallowed, (id., Ex. E.)

B. Bill of Lading

The Ward's declaration states that Ozark, pursuant to its custom and practice, treated the bill of lading for the freight as a contract of carriage between Plaintiff and Defendant. In 2000 it was Ozark's custom and practice of carry loads under a Uniform Straight Bill of Lading (Decl. at 2), that such a bill of lading required written claims for loss or damage to be filed with the carrier within nine months after delivery of the property, (id., Ex. A, § 3(b)), and that such a bill of lading required that suits for loss, damage, injury, or delay should be instituted against any carrier no later than two years and one day from the day when written notice is given by the carrier to the claimant that the carrier has disallowed the claim, (id., § 3(c)).

The declarations do not establish, however, the terms of the bill of lading governing the shipment in question.

///

1      III. <u>Analysis</u>

2      A. <u>Governing Law and Application</u>

3      The Carmack Amendment (here 49 U.S.C. § 14706) established a

4  uniform national liability policy for interstate carriers and

5  preempts state remedies for the liability for loss or injury to

6  property subject to it. <u>Hughes Aircraft Co. v. North American Van</u>

7  <u>Lines</u>, 970 F.2d 609, 613 (9th Cir. 1992) (holding that a state

8  negligence action for damage to goods carried interstate was

9  preempted where carrier conducted itself pursuant to contract);

10 <u>Pietro Culotta Grapes Ltd. v. Southern Pacific Transport Company</u>,

11 917 F.Supp. 713, 715-17 (E.D.Cal. 1996) (determining that state

12 contract and tort claims were preempted, citing authorities, and

13 noting the preemptive scope and intent of the amendment [then

14 codified at 49 U.S.C. § 11707, 10730, and 10103, and later

15 recodified at 49 U.S.C. § 14706]).

16     The amendment applies, <u>inter alia</u>, to transportation by a

17 motor carrier of property or passengers between a place in a

18 state and a place in another state. 49 U.S.C. § 13501(1)(a). A

19 "motor carrier" includes a person providing motor vehicle

20 transportation for compensation, and  "transportation" includes a

21 vehicle, instrumentality, or equipment of any kind related to the

22 movement of passengers or property, or both, regardless of

23 ownership or an agreement concerning use. 49 U.S.C. § 13102 (12),

24 (19). Under the statute, the essential basis for liability is the

25 bill of lading, and the liability is for the actual loss or

26 injury to property caused by the receiving or delivering carrier.

27 49 U.S.C. § 14706(a).

28     It thus appears that the statute applies to the transaction

in question in the case before the Court, and that it preempts
the state law claims based on the transportation of the load in
question.

B. <u>Statute of Limitations</u>

Section 14706(e) provides:

(e) Minimum period for filing claims.--

(1) In general.--A carrier may not
provide by rule, contract, or otherwise, a
period of less than 9 months for filing a
claim against it under this section and a
period of less than 2 years for bringing a
civil action against it under this section.
The period for bringing a civil action is
computed from the date the carrier gives a
person written notice that the carrier has
disallowed any part of the claim specified in
the notice.

Thus, the statute provides that a carrier may not provide
for a period of <u>less than</u> nine months for filing a claim, or <u>less</u>
<u>than</u> a period of two years for bringing a civil action against it
under this section. Likewise, 49 C.F.R. § 370.3 (2000) requires
that before a carrier pay a claim for loss or damage to cargo, a
claim be filed "within the specific time limits applicable
thereto and as otherwise may be required by law, the terms of the
bill of lading or other contract of carriage...." It also sets
forth minimum filing requirements for a claim that is "filed with
a proper carrier within the time limits specified in the bill of
lading or contract of carriage of transportation...." <u>Id.</u>

In the present case, the actual contract alleged to have
existed and to have been breached is not before the Court;
Defendant did not include a copy of the contract in the notice of
removal of the state court action to this Court or in the
exhibits to the declarations. Likewise, Defendant admits the

following:

> Despite numerous requests for Crown to produce the terms
> and conditions section of the bill of lading, Crown has
> not complied. There is no reason to assume that this
> particular load was carried under any other terms and
> conditions than those contained in a standard Uniform
> Straight Bill of Lading.

(Deft.'s Memo. at 3.) Ward declares that it was Defendant's
custom to treat a bill of lading as a contract of carriage,
(Decl. at 1), and that it was its custom to carry loads under a
Uniform Straight Bill of Lading." Defendant also argues that "it
can be assumed that the standard bill of lading terms applied to
carriage of the load in question." (Deft.'s Memo. at 2.)

It is clear that neither the bill of lading itself nor the
contract alleged to have been violated is before the Court. There
is no proof before the court sufficient to establish by a
preponderance of evidence the pertinent terms of the bill of
lading or contract relating to the maximum period of time within
which claims could be made and denied and actions could
thereafter be filed.[2] Although the statute refers to times that
cannot be shortened, it does not by its terms purport to state a
maximum period of time after which either presenting a claim to
the party, or filing a law suit, is no longer permitted. The
cases cited by Defendant all involve situations in which the bill
of lading stated a specific time within which a claim had to be
made or action had to be filed. Cherkis v. Atlas Van Lines, Inc.,
59 F.Supp.2d 203, 208 (D.Mass 1999) (nine-month period
established in the bill of lading); Delphax Systems, Inc. v.
Mayflower Transit, Inc. 54 F.Supp.2d 60, 61 (D.Mass 1999) (bill

---

[2] The Court notes that no discovery motions were filed.

11

of lading required a claim within nine months of a reasonable time for delivery). Likewise, Defendant's citation to Burtman Iron Works v. Con-Way Transportation Servies, 97 F.Supp.2d 122 (D.Mass 2000) is not helpful; although that case stands for the principle that when a claim is timely denied, the requisite time period for filing a lawsuit under the Uniform Straight Bill of Lading applies, in that case evidence was submitted that such a uniform bill of lading, requiring a claim within nine months and a lawsuit within two years of denial of the claim, had issued in the case, and the terms of the bill were clear. 97 F.Supp.2d at 124, 126.

Here, the burden of establishing the affirmative defense of statute of limitations is on the moving Defendant. California Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 (9th Cir. 1995). Further, all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). No basis for concluding that a Uniform Straight Bill of Lading was actually used is set forth other than Ward's statement regarding Defendant's custom at the time and that of "other motor carriers," (Decl. of Ward at 2). However, Defendant did not have the bill of lading; further, counsel states in the Memorandum (at 3) that the load in question was carried pursuant to a bill of lading which was apparently generated by P&O in Nevada. Defendant has not met its burden of establishing each essential element of a defense of the statute of limitations.

1   Further, no basis is given for a conclusion regarding the
2   terms of the parties' contract. Although it is possible that the
3   parties's contract and bill of lading provided for claims within
4   nine months and suit two years thereafter, it is likewise
5   possible that other provisions were made. Drawing a reasonable
6   inference in favor of the opposing party, the Court concludes
7   that Defendant has not established that it is entitled to
8   judgment as a matter of law on a statute of limitations defense.
9   Defendant has not shown that no rational trier of fact could find
10  for Plaintiff on this issue.

11   Finally, the Court notes that Defendant has not briefed the
12  applicability any statute of limitations. It does not appear that
13  any state or federal statute (such as Cal. Civ. Proc. Code § 337,
14  four years, or 28 U.S.C. § 1658, four years) would apply, but
15  even if it were assumed that it did, Defendant has not
16  established entitlement to judgment as a matter of law.

17   IV. <u>Disposition</u>

18   Accordingly, Defendant's motion for summary judgment IS
19  DENIED.

20

21  IT IS SO ORDERED.

22  **Dated:   July 7, 2005**          _____/s/ Sandra M. Snyder_____
    icido3                              UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28